**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Steve Martin, individually, and on behalf of others similarly situated | Case No.:  1:22-cv-02124 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Antony Blinken, Secretary, U.S. Department of State; | |
| Defendant. | |

1

CLASS ACTION COMPLAINT

# INTRODUCTION

1.    This class action lawsuit brought by Representative Plaintiff Steve Martin ("Plaintiff"), on his own behalf and on behalf of the proposed Class identified below, challenges the systematic failure of the U.S. Department of State ("DOS") to meet its obligations under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, *et seq*. ("Rehabilitation Act").[1]

2.    As detailed in the factual allegations below, this lawsuit challenges, among other deficiencies, DOS's policy and practice of denying equal benefits of employment to federal employees associated with family members with disabilities.

3.    The Rehabilitation Act prohibits the federal government from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4); 29 U.S.C. § 791(f) (incorporating the standards for liability set forth in the ADA).

4.    Plaintiff Steve Martin was a federal employee who served the Department of Homeland Security ("DHS") and its predecessor agencies for thirty years when he was offered a prestigious assignment as Attaché for the DHS in New Delhi, India, in 2012. At the time, Plaintiff's daughter ("G.M.") was a 12-year-old girl with diagnoses of Attention-Deficit/Hyperactivity Disorder ("ADHD"), Obsessive Compulsive Disorder ("OCD"), and Dyslexia.

5.    In order to bring his family abroad and receive benefits under DOS's medical program, Plaintiff's Eligible Family Members ("EFMs") had to obtain medical clearance from

---

[1] 29 U.S.C. § 791(f) (Rehabilitation Act incorporates the standards for liability set forth in the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq*.); 29 C.F.R. § 1614.203(b).

CLASS ACTION COMPLAINT

DOS's Office of Medical Services ("MED"). *See* 16 Foreign Affairs Manual ("FAM") 121; 16 FAM 122.2; 16 FAM 214. It is DOS policy, pursuant to section 901 of the Foreign Service Act (22 U.S.C. 4081), to authorize and pay for the official travel and related expenses of members of the Foreign Service and their families. *See* 14 FAM 511.1-1.

6.      MED processes tens of thousands of medical clearances per year. Of those, approximately one-third are for EFMs or employees of agencies other than DOS. MED issues a Class 2 medical clearance, requiring post approval, to approximately seven percent of individuals seeking clearance.

7.      DOS failed to conduct an individualized assessment of G.M.'s history and/or medical needs, and MED denied her overseas medical clearance based on stereotypes of people with disabilities, rather than G.M.'s particular circumstances. DOS's denial of G.M.'s medical clearance deprived Plaintiff of employment benefits afforded to federal employees whose EFMs do obtain overseas medical clearance, including but not limited to the routinely-provided benefits of traveling to international posts with family members, educational allowances, and housing allowances.

8.      Because DOS denied G.M.'s overseas medical clearance, Plaintiff was forced to make a difficult decision to either accept the prestigious Attaché position in New Delhi, but leave his daughter behind in the United States, or decline the Attaché position and keep his family together. Ultimately, Plaintiff forewent the position to remain in the United States with his daughter. Numerous employees per year are forced to make similar decisions based on the denied medical clearances of EFMs, but employees without disabled EFMs are not required to make similar decisions.

CLASS ACTION COMPLAINT

9.      Even though DOS was not Plaintiff's employer-of-record, it was Defendant's discriminatory acts that caused him to lose the benefits that came with his overseas assignment and would have accrued to him had DOS medically cleared G.M.

10.     DOS routinely fails to meet its obligations under the Rehabilitation Act by denying equal benefits to qualified federal employees because of the known disabilities of family members. This lawsuit seeks an end to this systemic discrimination against people associated with people with disabilities. Plaintiff seeks relief for the Class pursuant to the Rehabilitation Act, including back pay, compensatory damages, declaratory relief, attorneys' fees and costs, and interest.

11.     Plaintiff timely exhausted administrative remedies concerning his individual and class claims with the Department of State and the U.S. Equal Employment Opportunity Commission, and was given a right to sue in federal court on April 20, 2022, allowing this lawsuit to be filed now.

## THE PARTIES

12.     Defendant Antony Blinken is the United States Secretary of State. He is sued in his official capacity.

13.     DOS is an agency within the executive branch of the United States government, tasked with promoting U.S. security, prosperity, and democratic values throughout the world.

14.     Like any federal agency, DOS is obligated to serve as a model employer for individuals with disabilities. 29 C.F.R. § 1614.203(c) ("The Federal Government shall be a model employer of individuals with disabilities.").

15.     Individual and Representative Plaintiff Steve Martin resides in the State of Texas.

16.     At all times relevant to this Complaint, Plaintiff was qualified for the Attaché position and had, in fact, received a conditional offer for the job.

17.     At all times relevant to this Complaint, Plaintiff's daughter, G.M., had diagnoses of ADHD, OCD, and Dyslexia, and was perceived by DOS as an individual who had ADHD, OCD, and/or Dyslexia.

18.     ADHD, OCD, and Dyslexia are mental or psychological impairments which are considered disabilities under the Rehabilitation Act. *See* 29 C.F.R. § 1630.2(h)(2) (definition of "mental impairment"), j(3)(iii) ("Predictable assessments").

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because DOS is located in this District and a substantial part of the events giving rise to the claims set forth herein occurred in this District.

## FACTUAL ALLEGATIONS

### *DOS Policies and Practices Discriminate Against Federal Employees with Family Members with Disabilities.*

21.     DOS drafts, revises, and maintains the *Foreign Affairs Manual* ("FAM") and *Foreign Affairs Handbook* ("FAH") – two documents in which DOS "articulates official guidance, including procedures and policies, on matters relating to Department management and personnel…." 2 FAM 1111.1(a).

22.     DOS operates the Department of State Medical Program, which adjudicates EFM medical clearances: "All employees and eligible family member(s) who are posted abroad require a medical clearance or a waiver to receive benefits under State's Medical Program (MED).

CLASS ACTION COMPLAINT

Benefits include, but are not limited to, post health unit access, medical evacuation travel, and secondary payer coverage for hospitalizations." 16 FAM 211.1.

23.     MED processes and makes medical clearance determinations for all U.S. government employees and EFMs participating in the Department of State Medical Program. 16 FAM 211.1. These government employees work for agencies including, but not limited to, DHS, the U.S. Agency for International Development ("USAID"), the U.S. and Foreign Commercial Service, the Foreign Agricultural Service, the Animal and Plant Health Inspection Service, and the U.S. Agency for Global Media. *See* 16 FAM 211.1.

24.     MED's manner of determining medical clearances is the same, regardless of which federal agency the federal employee or EFM happens to come from.

25.     Pursuant to 16 FAM 211.2, MED has the authority to issue the following medical clearance classifications to federal employees and EFMs:

    a.  Worldwide available (Class 1):  Issued to applicants, employees and eligible family members who have no identifiable medical conditions that would limit assignment abroad.

    b.  Post-specific (Class 2):  Issued to an individual with a medical condition that would pose a significant risk to the health or safety of the individual or others if the individual were assigned to work at one or more posts abroad.  The Office of Medical Services (MED) determines approval for assignment to a specific post based on the criteria above ("post approval").

    c.  Domestic only (Class 5):  Issued to all who have a medical condition which is incapacitating or for which specialized medical care is best obtained in the

CLASS ACTION COMPLAINT

United States.  Employees or eligible family members with a Class 5 medical clearance may not be assigned outside the United States.

d.  Temporary travel (Class 6):  Issued only to an eligible family member who is not medically cleared to reside at the employee's assigned post but is authorized to visit that post for a period of time not to exceed 120 days per calendar year.

e.  Pending (Class 7):  Issued to individuals awaiting completion of the evaluation of a medical condition within 90 days.  Class 7 is not valid for travel to an assignment abroad.  If the examination/evaluation is not completed within 90 days, the individual will be issued a Class 8 clearance and will not be eligible for the Medical Program abroad.

f.  Incomplete/cancellation (Class 8):  Issued to an individual whose pre-employment medical evaluation is incomplete and the application has been inactive for more than 90 days.  Class 8 clearances will also be issued to an employee or eligible family member who is in pending status (Class 7) and who has not completed the evaluation within the allotted 90 days.

g.  Separation (Class 9):  Issued to employees and eligible family members following separation from State's Medical Program.  This includes eligible family members who have reached age 21, or persons leaving the program through legal separation or divorce.  Although qualified students who travel on educational travel orders are eligible for care abroad under the Medical Program up to their 23rd birthday (16 FAM122.2, subparagraph a(2)), their separation examination must be completed within 90 days of their 21st birthday (16 FAM 122.2, subparagraph a(1)).

CLASS ACTION COMPLAINT

      h.   Deceased (Class 10): Issued to employees or eligible family members at notification of death.

26.     Pursuant to 16 FAM 213(b), "An employee or eligible family member with a post-specific (Class 2) medical clearance must obtain post approval from MED.  Failure to obtain post approval before traveling abroad may result in the individual being denied participation in the Medical Program and access to health units abroad."

27.     Federal agencies other than DOS merely rubberstamp MED's medical clearance decisions almost universally. Federal agencies maintain policies that do not allow waiver of MED's medical clearance decisions under almost any circumstance.

28.     Federal agencies do not allow employees or their EFMs to travel to post without MED-approved medical clearance, and this is what happened in Plaintiff's case.

29.     Each year, MED processes thousands of requests for medical clearances for EFMs.

30.     Federal employees with EFMs with Class 2 medical clearance must submit documentation such as medical records, and reports from specialists, hospitals, therapists, and schools when seeking post approval.

31.     For EFMs in school, MED considers medical conditions and "educational issues," when processing medical clearances.

32.     MED may also require EFMs to undergo medical examinations as a part of the medical clearance process.

33.     Following its standard practices, procedures, and policies, MED does not conduct individualized assessments of EFMs' medical or educational needs during the medical clearance or post approval processes, before denying clearance. MED does not engage in an interactive

CLASS ACTION COMPLAINT

dialogue with employees, EFMs, or their doctors, following its standard policies, practices, and procedures.

34.     Following its standard practices, procedures, and policies, MED does not consider or assess EFMs' potential ability to receive reasonable accommodations for their disabilities during the medical clearance process, before denying clearance.

35.     Following its standard practices, procedures, and policies, MED does not consider or assess EFMs' prior experience living abroad during the medical clearance process.

36.     Rather, as a regular practice, procedure, and policy, MED denies medical clearance and/or post approval to EFMs with disabilities based upon stereotypes about their medical conditions, denying benefits to their federal employee family members, which may foreseeably foreclose certain employment opportunities, as in Plaintiff Martin's case.

37.     When an EFM is denied medical clearance or post approval, the federal employee family member can appeal the decision to DOS's Medical Review Panel ("MRP"). Federal employees may submit an appeal brief and further information as a part of their appeals. Following its standard practices, procedures, and policies, the MRP does not typically communicate directly with federal employees, EFMs, or their doctors during their appeals, but merely reviews documents and confers internally before issuing decisions.

38.     Following its standard practices, procedures, and policies, the MRP does not conduct individualized assessments of EFMs' medical or educational needs during the appeals process.

39.     Following its standard practices, procedures, and policies, the MRP does not consider or assess EFMs' potential to receive reasonable accommodations during the appeals process.

40.    Following its standard practices, procedures, and policies, the MRP does not consider or assess EFMs' prior experience living abroad during the appeals process.

41.    Rather, as a regular practice, procedure, and policy, the MRP denies appeals based upon stereotypes about EFMs' medical conditions, denying benefits to their federal employee family members, which may foreseeably foreclose certain employment opportunities, as in Plaintiff Martin's case.

42.    DOS's medical clearance requirements for EFMs, which fail to consider possible accommodations or individualized assessments, constitute a "personnel management policy or practice" under 29 C.F.R. § 1614.204(a)(1).

*DOS's Discriminatory Policies and Practices as Applied to Plaintiff Martin.*

43.    On or about January 2012, DHS offered Plaintiff Martin the prestigious position of Attaché (also called Supervisory Criminal Investigator) located in New Delhi, India. The position was expected to last three to five years.

44.    At the time, Plaintiff's daughter was a 12-year old girl who thrived in a normal public school environment.

45.    Between approximately January and April 2012, Plaintiff submitted his daughter's medical records and reports from medical providers to MED in compliance with MED's medical clearance process. In these documents, Plaintiff disclosed his daughter's diagnoses of ADHD, OCD, and Dyslexia, and that she had been prescribed medication for her disabilities.

46.    During the medical clearance process, Plaintiff secured confirmation from a Psychiatrist in New Delhi that he would monitor and prescribe G.M.'s medication at post. Plaintiff informed MED of this development.

CLASS ACTION COMPLAINT

47.    G.M. had previously accompanied her father to other posts abroad without incident. She had traveled to nine countries, and had lived overseas for an extended period of time. During the medical clearance process, Plaintiff informed MED of G.M.'s extensive travel abroad.

48.    No one from MED requested to examine or evaluate G.M. individually. MED did not engage in any interactive process with Plaintiff or G.M., or contact G.M.'s treating providers, who were in the best position to evaluate her ability to live abroad.

49.    MED did not consider any reasonable accommodations for G.M. during the medical clearance process.

50.    MED did not consider the resources available in or around New Delhi in order to conduct a compliant individualized assessment.

51.    On or about March 28, 2012, Howard Gershenfeld, MD, Ph.D, who was the Regional Medical Officer for India, Pakistan, Nepal, Bangladesh, and Sri Lanka, emailed Plaintiff, urging him to disclose all information about his daughter because, "Unfortunately, [this] region has had several unfortunate cases of 'bad fits' due to selective disclosures, leading to problems for all parties, unhappiness, and bad outcomes."

52.    Plaintiff complied with the medical clearance process in its entirety.

53.    On April 9, 2012, the Director of Medical Clearances informed Plaintiff via email that MED had issued his daughter a Class 5 medical clearance, which meant she was not cleared for any assignment abroad and could not be assigned outside of the United States. The email stated that the Class 5 clearance was based on the opinion of a consultant with significant concern about G.M.'s behavior, despite the availability of support at post. This consultant had not personally met with or examined G.M. This email informed Plaintiff of his right to appeal MED's decision to the MRP.

CLASS ACTION COMPLAINT

54.    At the time of the medical clearance determination, Plaintiff was aware that the consultant cited in the April 9, 2012 denial had expressed concern about G.M.'s tendency to wash her hands during times of nervousness. The consultant stated, "she could have an issue with germs and India has a lot of germs." None of G.M.'s treating providers expressed concern about her tendency to wash her hands during times of nervousness or that she would have any difficulty with living in India based upon this behavior.

55.    On or about April 24, 2012, Plaintiff submitted an appeal of G.M.'s Class 5 medical clearance determination to the MRP. In support of his appeal, Plaintiff submitted personal statement, new letters from G.M.'s treating providers supporting her ability to live in India, and an acceptance letter from an American school in New Delhi to the MRP.

      a.    A psychiatrist, who was G.M.'s treating physician for ADHD, provided a letter attesting that G.M.'s ADHD was well-managed with medication, that she required no special accommodations, and was doing well in school. He confirmed that G.M. did not display an aversion or phobia to germs. The psychiatrist's evaluation was that G.M. was stable to travel internationally and live abroad. He recommended that G.M. could successfully attend school in India and could receive care from the local, highly trained psychiatrist in New Delhi, who had already agreed to treat her, to monitor her prescribed medication.

      b.    A Licensed Clinical Social Worker ("LCSW"), who was G.M.'s treating psychotherapy provider for ADHD and Dyslexia, provided a letter confirming her professional opinion that G.M. required no special accommodations in her public school setting, and that she was fit to travel and attend school in an

overseas environment. The treating LCSW opined that G.M.'s extensive prior experience travelling internationally and good family support would allow her to make a smooth transition socially and academically to post abroad.

    c.   The acceptance letter from the American school in New Delhi confirmed that the school could provide support for G.M.'s diagnoses of ADHD, OCD, and Dyslexia.

56. On or about April 30, 2012, less than one week after Plaintiff filed his appeal, the MRP came to a determination to deny the appeal, affirming G.M.'s Class 5 clearance, with no interactive dialogue whatsoever with Plaintiff, G.M., or her doctors.

57. The MRP's decision denying his appeal was communicated to Plaintiff via email on May 2, 2012.

58. Plaintiff sought a waiver from DHS to allow G.M. to travel to post with him despite MED's medical clearance denial. On or about June 19, 2012, DHS determined that it would not grant Plaintiff a waiver, inasmuch as DHS has never granted a waiver of MED's medical clearance denials, which it adopts without scrutiny, like other agencies. After the denial of his waiver, DHS communicated to Plaintiff if he wanted to accept the Attaché position, he would have to leave his daughter in the United States, a Hobbesian choice that those without disabled family members are not required to make.

59. Plaintiff's experience is illustrative of how the DOS medical clearance process discriminates against federal employees associated with family members with disabilities, regardless of which federal agency they serve.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) of the

## CLASS ACTION COMPLAINT

Federal Rules of Civil Procedure ("FRCP") on behalf of the following defined Class:

> U.S. Government civilian employees and applicants who, since April 6, 2012, suffered the U.S. Department of State's denial of medical clearance to a family member, where the employees or applicants were consequently denied any U.S. Government international employment opportunity, including benefits typically afforded individuals selected by U.S. Government agencies for long-term posting abroad.

61.     <u>Numerosity</u>:  The Proposed Class is so numerous that joinder of all members is impracticable.

62.     A report by the Foreign Service Association indicates that as of June 30, 2022, there were DOS 13,814 Foreign Service employees and 2,149 DOS EFMs. https://afsa.org/sites/default/files/0622_state_dept_hr_factsheet.pdf (last accessed July 15, 2022).

63.     A report by the Foreign Service Association indicates that as of June 30, 2021, there were 13,555 DOS Foreign Service employees and 1,988 DOS EFMs. https://afsa.org/sites/default/files/0621_state_dept_hr_factsheet.pdf (last accessed July 14, 2022).

64.     As of the beginning of 2020, the Foreign Service Association estimated approximately 15,600 members across all agencies. https://afsa.org/foreign-service-numbers (last accessed July 14, 2022).

65.     According to DOS's publicly available data, over 40 EEO complaints are filed against DOS each year on the basis of disability discrimination:  52 in 2021, 47 in 2020, 64 in 2019, 71 in 2018, and 61 in 2017. https://www.state.gov/wp-content/uploads/2022/05/No-Fear-Act-2nd-Quarter-22.pdf (last accessed July 14, 2022).

66.     As of March 31, 2022, 22 EEO complaints had been filed against DOS on the basis of disability discrimination. *Id*.

67.     In one typical year, DOS processed approximately 29,000 medical clearances,

including 10,000 for EFMs and/or non-DOS employees.

68.     Considering the approximately 2,000 EFMs at any given time and over 15,000 Foreign Service employees at any given time, and the nearly 29,000 clearances processed in a single typical year (approximately one-third of which are for EFMs or employees of agencies other than DOS), and that approximately seven percent of individuals are issued a Class 2 medical clearance requiring post approval, Plaintiff is informed and believes that at least several dozen, and likely hundreds, of EFMs have been denied medical clearance since Mr. Martin's filing in 2012, based upon DOS's flawed policies, practices, and procedures, resulting in a deprivation of employment benefits to those federal employees and applicants associated with those EFMs.

69.     Plaintiff is aware of numerous federal employees or former federal employees whose EFMs have been similarly denied medical clearance throughout the period since 2012, depriving the employees of equal employment benefits, according to the same flawed policies, practices, and procedures, though the EFMs had a variety of different medical conditions, their government employee-relatives worked at different agencies, and they were to be posted in different parts of the world.

70.     For example, Plaintiff is aware of a federal employee whose daughter's post approval was denied for a large, metropolitan city in Europe based on a psychiatric condition and a learning disability in 2021. The EFM – originally diagnosed in 2013 - had previously lived abroad with her federal employee parent at multiple posts around the world. When seeking post approval for the European city, the federal employee worked with another federal agency to locate multiple local healthcare providers and educational services who could treat and assist her daughter at post. The federal employee was told by a DOS official that MED could not approve the EFM's medical clearance in part because recently, there was another child living with a family at this

CLASS ACTION COMPLAINT

location who required a medical curtailment for a mental health emergency, thereby stereotyping this EFM based upon her medical condition, instead of considering her based upon her own individualized circumstances. The EFM's medical clearance was denied by MED without interactive dialogue, without consideration of individualized circumstances, and without consideration of any reasonable accommodations.

71.    Typicality:  Plaintiff's claims are typical of the members of the Proposed Class.

72.    Plaintiff was a federal employee who suffered the U.S. Department of State's denial of medical clearance to a family member, and was consequently denied equal employment benefits to those afforded employees without disabled family members, with the foreseeable consequence of losing a U.S. Government international employment opportunity.

73.    Plaintiff's claims are typical of the claims of the proposed class in the following ways: (1) Plaintiff is a member of the proposed class; (2) Plaintiff's claims arise from the same policies, procedures, practices and course of conduct on the part of Defendant; (3) Plaintiff's claims are based on the same legal theories as those of the proposed class and involve similar factual circumstances; (4) the injuries suffered by Plaintiff are similar to the injuries suffered by the proposed class members (namely, denied medical clearance leading to denied benefits); and (5) the relief sought herein will benefit Plaintiff and all class members alike.

74.    Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of employees and former employees, where individuals may lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large governmental defendant, and fear retaliation and blackballing. Prosecuting dozens of identical individual lawsuits across the country on behalf of individuals dispersed around the world does not promote judicial efficiency, equity, or consistency

CLASS ACTION COMPLAINT

in judicial results, when there is a single pattern, practice, and/or policy being challenged: DOS's denial of medical clearance to a federal employees' EFMs, and consequently denying U.S. Government international employment opportunities, including benefits typically afforded individuals selected by U.S. Government agencies for long-term posting abroad.

75.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the proposed Class, has no conflicts with the proposed Class's interests, and has retained counsel experienced in complex class litigation, including but not limited to class disability discrimination litigation against the DOS.

76.    Commonality:  Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class, including but not limited to:

a.   Whether DOS's denial of medical clearances to EFMs deprives federal employees of the full, typical benefits of employment.

b.   Whether DOS denies medical clearances to EFMs based upon policies, practices, and/or procedures that fail to provide individualized assessments of EFMs' medical conditions.

c.   Whether DOS denies medical clearances to EFMs based upon policies, practices, and/or procedures that fail to engage in an interactive dialogue regarding EFMs' medical conditions.

d.   Whether DOS denies medical clearances to EFMs based upon policies, practices, and/or procedures that fail to consider reasonable accommodations for EFMs' medical conditions.

e.   Whether DOS relies on myths, fears, and/or stereotypes of people with

CLASS ACTION COMPLAINT

disabilities in adjudicating EFM medical clearances.

f.  Whether the Agency's manner of adjudicating EFM medical clearances has a disparate impact on federal employees associated with people with disabilities, perceived disabilities, and/or records of disabilities. And,

g.  The appropriate injunctive relief to prevent prospective harm to Plaintiff and those similarly situated.

77.  This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because DOS has acted or refused to act on grounds that apply generally to the proposed Class, including but not limited to maintaining a uniform pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association with family members with disabilities, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

78.  Class certification is also appropriate under Federal Rule of Civil Procedure Rule 23(b)(3) because questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. DOS's uniform pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association with family members with disabilities has stymied federal employees' careers and caused federal employees emotional harm. The damages suffered by the individual proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. Proposed Class members fear workplace retaliation and being "blackballed" from obtaining future employment. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent

CLASS ACTION COMPLAINT

judgments about DOS's pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association with family members with disabilities.

79.    Class certification may also be maintained under Federal Rule of Civil Procedure Rule 23(c)(4) because resolving the central question of whether DOS systematically denies equal benefits of employment to federal employees based on their association with family members with disabilities can be established with common proof using, for example, statistics, statements from DOS officials, and representative testimony and documents from class members. Thereafter, individual class members may be required to prove their individual entitlements to monetary recovery and DOS would have an opportunity to present any affirmative defenses with respect to such individual Class members in *Teamsters* hearings. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361–62 (1977).

80.    Class certification is also appropriate because questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. DOS's uniform pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association with family members with disabilities has foreseeably stymied federal employees' career opportunities and caused federal employees emotional and/or physical harm. The damages suffered by the individual proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. Proposed Class members fear workplace retaliation and being "blackballed" from obtaining future employment. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about DOS's

pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association with family members with disabilities.

81.    Plaintiff intends to send notice to all members of the Proposed to the extent required by Rule 23. The names, email addresses, and mailing addresses of the members of the Proposed Class are available from DOS because class members each had EFMs undergo the medical clearance process with DOS, and DOS tracks all medical clearance determinations for EFMs in the e-MED system.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING

82.    A federal employee seeking to assert a Rehabilitation Act claim in federal court must exhaust her or her administrative remedies, either with an individual complaint (29 C.F.R. § 1614.106) or a class complaint (29 C.F.R. § 1614.204).

83.    "[A]t any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint," a plaintiff who initially filed a complaint to remedy individual discrimination may "move for class certification." MD-110, Ch. 8, § II.A. "'[M]ove' in this context means that the complainant must make his/her intention to process the complaint as a class action clear. A complainant may make his/her intention clear through a letter, a formal motion, or any means that effectively informs the agency or Administrative Judge of the complainant's intent to pursue a class action." *Id.* at n. 1.

84.    A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under the Rehabilitation Act, to file a civil action in an appropriate United States

District Court "Within 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. § 1614.407(c).

85.    Plaintiff learned of the final, denied clearance for his EFM on May 2, 2012, and timely contacted a DOS EEO counselor on May 22, 2012 to submit an informal EEO complaint.

86.    On June 25, 2012, Plaintiff timely submitted a formal EEO complaint to DOS alleging associational disability discrimination, seeking to represent "a class of individuals denied employment opportunities abroad because of the State Department's actions discriminating against those associated with persons with disabilities, perceived disabilities, and/or with records of disabilities."

87.    After filing his class complaint, Plaintiff was referred for a hearing before the Equal Employment Opportunity Commission ("EEOC"). The AJ issued an Acknowledgment and Order approximately a year later, on June 27, 2013.

88.    After motions to dismiss and a partially-successful appeal and reconsideration process, Plaintiff's administrative process stretched many years but never included any formal discovery, a hearing, or any decision on the merits. Finally, on April 20, 2022, the EEOC notified Plaintiff: "You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision."

89.    Plaintiff timely files the instant complaint within 90 days of the April 20, 2022 EEOC right to sue notice.

90.    Accordingly, Plaintiff has timely exhausted his administrative remedies under the Rehabilitation Act.

**FIRST CLAIM FOR RELIEF**

**<u>Violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791</u>**

**Associational Disability Discrimination**

91.     Plaintiff, on behalf of himself and the proposed Class hereby incorporates by reference the allegations in the preceding paragraphs.

92.     The standards for a violation of the provisions of the Rehabilitation Act of 1973 are the same as those under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq*. ("ADA").

93.     The ADA, in relevant part, prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

94.     The ADA, in relevant part, defines "discriminat[ion] against a qualified individual on the basis of disability" as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

95.     Plaintiff and each member of the proposed Class is a "qualified individual."

96.     Plaintiff and each member of the proposed Class has a relationship or association with an individual with a known disability.

97.     DOS is an "employer" within the meaning of the Rehabilitation Act of 1973.

98.     Even though DOS is not the employer-of-record for the entirety of the proposed Class, it is Defendant's discriminatory acts that cause the proposed Class members to lose benefits that come with overseas assignments.

99.     As a direct, legal and proximate result of DOS's uniform pattern, practice, and/or policy of denying equal benefits of employment to federal employees based on their association

CLASS ACTION COMPLAINT

with family members with disabilities, Plaintiff and the proposed Class members have lost employment benefits typically afforded to other federal employees. Plaintiff and the proposed Class members have lost damages in an amount to be proven at trial.

100.    Pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and as a result of DOS's discriminatory conduct, Plaintiff and the Class are entitled to recover damages for economic harm and emotional distress, attorneys' fees, legal costs, and expert witness fees.

101.    Plaintiff timely exhausted administrative remedies.

## PRAYER FOR RELIEF

102.    WHEREFORE, Plaintiff, on behalf of himself and all members of the Class, prays for relief as follows:

a.  That the Court determine that this action may proceed as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure;

b.  That the Court adopt a *Teamsters* framework for adjudicating this case on a class-wide basis, *i.e.,* certifying a liability class and thereafter permitting individualized damages proceedings;

c.  Programmatic relief requiring DOS to implement an EFM medical clearance process that includes individualized consideration of each EFM;

d.  Programmatic relief requiring DOS to implement an EFM medical clearance process that includes an interactive dialogue regarding each EFM;

e.  Programmatic relief requiring DOS to implement an EFM medical clearance process that considers reasonable accommodations that might be available to support medical clearance of each EFM;

f.  Programmatic relief requiring DOS to provide equal benefits of employment to federal employees with family members with disabilities;

g.  Compensatory damages, including emotional distress damages and lost wages and benefits, where applicable;

h.  Interest on judgment, including pre-judgment interest, to the extent permitted by law;

i.  Attorneys' fees and legal costs;

j.  For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED:  July 19, 2022                By:        /s/ Bryan J. Schwartz
                                          Bryan J. Schwartz (DC Bar No. 482960)
                                          BRYAN SCHWARTZ LAW
                                               Email: bryan@bryanschwartzlaw.com
                                               180 Grand Avenue, Suite 1380
                                               Oakland, CA 94612
                                               Telephone: (510) 444-9300
                                               Facsimile: (510) 444-9301

                                          *Attorney for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT